Cheshire,  }
April 1, 1919. }

### KEENE *& a. v.* CHESHIRE COUNTY *& a.*

A county treasurer for a series of years erroneously distributed the county taxes between the towns in his county according to a wrong proportion. Nothing having been paid into the county treasury except what was collected on account of such county taxes, the only persons injured by the error are the individual taxpayers in the several towns, and the court has no jurisdiction to entertain their appeal filed more than six months after notice of the tax.

Ordinarily the only remedy of a taxpayer for an illegal assessment is by appeal; but, if the supervisory power of the court may be exercised in such case, the application must ordinarily be made within the time limited for an appeal and relief will not be granted unless applied for within a reasonable time and not if the effect of granting the relief would merely be to transfer the injury to other parties.

PETITION, alleging that through error of the county treasurer in issuing his warrants for the assessment and collection of the county tax in the years 1911, 1912, 1913, 1914 and 1915 certain towns in the county, all but two of which joined as plaintiffs, assessed, collected and paid to the treasurer of the county more than their just proportion of county taxes in said years; said sums being assessed, collected and paid in accordance with the county treasurer's erroneous warrants while the remaining towns, all of which are joined as defendants, paid less in the same amount through a similar assessment, collection and payment of the county tax.

The prayer of the petition is that the defendant towns be required to pay into the treasury of the county the amounts which they have severally underpaid during the six years and that the county be ordered to pay to the petitioners the amount of their several overpayments.

Transferred upon the defendants' demurrers by *Marble*, J., without a ruling from the April term, 1918, of the superior court.

*Joseph Madden* and *William H. Watson* (*Mr. Madden* orally), for the petitioners.

*Roy M. Pickard*, solicitor (by brief and orally), for the county.

*Charles H. Hersey*, for Hinsdale, Jaffrey, Roxbury and Troy.

*Richard J. Wolfe*, for Nelson.

*Philip H. Faulkner* and *Streeter, Demond, Woodworth & Sulloway*
(*Mr. Demond* orally), for Dublin, Fitzwilliam, Harrisville, Richmond,
Sullivan, Walpole and Winchester.

PARSONS, C. J.   "An apportionment of public taxes according to
the valuations of the polls and ratable estates in the several towns
shall be made by the legislature at its January session eighteen
hundred and ninety-five, and in every fourth year thereafter."   P.
S., c. 14, s. 1.   This statute binding merely as a declaration of policy
was followed by apportionment acts: in 1903, Laws 1903, c. 108;
1907, Laws 1907, c. 2;  1911, Laws 1911, c. 41; 1913, Laws 1913, c. 100.
By the act of 1903 Cheshire county was called upon for $73.84 of
each $1000 of the state tax.   Of this $27.07 was required of the city
of Keene.   By the act of 1913, taking that year only for example,
the proportion of Cheshire county was $69.79 and Keene's share
$23.40.

"The county treasurer shall issue his warrant to the selectmen of
the several towns in the county liable to pay state taxes, requiring
them to assess, collect, and pay to the treasurer of the county, within
such time as shall be therein directed, their just proportion of all taxes
granted by the county convention, according to their proportion
of public taxes for the time being."   P. S., c. 28, s. 8.   The complaint
is that the county treasurer for the years in question distributed the
county tax between the towns in the county according to the pro-
portions of the act of 1903, c. 108, instead of according to "their pro-
portion of public taxes for the time being."   The proportion of Keene
under the act of 1903 was 2707/7384, while by the act of 1913 it
was only 2340/6979.   By the error the warrants issued to the select-
men of the petitioning towns were as much too large as those to
the towns made defendants were too small.

Whether the county taxes in the years complained of were legally
assessed, collected and paid over by the public officers upon whom
that duty is imposed by law (P. S., c. 59, ss. 2, 6, 7;  Laws 1903, c.
111, s. 1) or without authority (*Canaan* v. *District*, 74 N. H. 517, 535–
537) by the towns, as alleged in the petition, in the absence of any
allegation that anything was paid into the county treasury except
what was collected on account of the county tax, it is clear the only
persons injured by the alleged error of the county treasurer are
the individual taxpayers in the several towns who paid more in
county taxes than they were legally required to pay.

Despite the numerous objections taken in the demurrers to the

sufficiency of this proceeding as to form and parties, if the persons injured have now a remedy which they care to pursue, the proceeding, should justice require, could be remodeled by amendment so as to obviate the objections now taken. At the time, these taxpayers had a sufficient remedy by appeal, P. S., *c.* 59, *ss.* 10, 11, and in a proper case might doubtless have had relief by mandamus or other direct proceeding seasonably brought. *Edes* v. *Boardman,* 58 N. H. 580, 595. The court, however, has no jurisdiction to entertain an appeal filed more than nine (six, Laws 1913, *c.* 67) months after notice of the tax. P. S., *c.* 59, *s.* 11. *Larkin* v. *Portsmouth,* 59 N. H. 26; *Farmington* v. *Downing,* 67 N. H. 441. Ordinarily this appeal, a petition for abatement, is the only remedy. *Rowe* v. *Hampton,* 75 N. H. 479. Having this remedy the taxpayer cannot question the validity of the assessment in any collateral proceeding. *Edes* v. *Boardman, supra; Canaan* v. *District,* 74 N. H. 8. If under the circumstances the supervisory power of the court could be invoked, by analogy application must ordinarily be made within the time limited for an appeal. *Boody* v. *Watson,* 64 N. H. 162, 189. Such relief will not be granted unless applied for within a reasonable time. High Extra. Rem., *ss.* 204, 269. It will not be granted when the effect would be not to cure the wrong, but merely to transfer the injury to other parties.

The foundation of this claim is the change in the relative amount of taxable estate throughout the county. If a reassessment were now ordered, assuming without examination that power exists to make the order, it would be necessary to distribute the tax according to the proportion of public taxes in effect when the several taxes were laid or as to that now in effect. A reassessment of the tax according to the proportion now in force would produce the situation of which the plaintiffs complain. An assessment now according to the proportion in effect when the tax was laid would place more than their share of the burden upon the taxpayers in towns in which the valuations are now less than when the proportion was established. It is manifest justice could not be done by correction of the assessment by mandamus unless ordered so promptly as to be effected before substantial change occurred in the proportions of public taxes assigned the towns.

Although the individual taxpayers were wronged and had a remedy they could waive the injury. The total wrongful assessment during the six years appears to amount to a considerable sum. But the proportionate part of this sum wrongly assigned a particular town in each of the six years could not have materially affected any individual

tax. The taxpayer, if aware of the error, may have regarded it as too inconsiderable to render litigation advisable. But whatever the reason was, by inaction the parties injured have lost their right to relief. As no proceedings can be maintained by them individually it follows no assignees, voluntary or corporate, can in their name or behalf enforce rights which those injured do not now possess.

*Petition dismissed.*

PLUMMER, J., was absent: YOUNG, J., dissented: the others concurred.