Coos,
No. 5096.

Coos Lumber Company

*v.*

Builders Lumber and Supply Co.

Argued January 2, 1963.

Decided January 31, 1963.

*George H. Keough* (by brief and orally), for the plaintiff.

*Joseph Stancik* and *Robert Shaw* (*Mr. Shaw* orally), for the defendant.

LAMPRON, J.  As a result of a purchase order from the defendant dated July 6, 1960, the plaintiff agreed to ship to it at a sawmill in Bridgewater the following:

"Approx 2½ million feet International log Scale, #1 Spruce logs 12′ to 16′ minimum top diameter 8″.

"All to be delivered prior to 12-31-60 $60/M′ "

These logs were to be cut by the plaintiff from standing timber it had purchased in the town of Livermore on the "Greeley Brook Chance lot."  There was evidence that this was virgin timber for which the defendant was paying a premium price.

It was the position of the defendant, and there was testimony to that effect, that the timber on plaintiff's lot was insufficient to meet the requirements of the contract and that the first loads of logs delivered to it about the 28th or 29th of August did not meet the specifications as a result of which the parties agreed to terminate their contract.

However there was sufficient evidence to warrant a finding by the jury that the agreement was not cancelled by mutual consent; that it was breached by the defendant, and to support a verdict for the plaintiff.

Although there was testimony from which the jury could have found that plaintiff's cost to produce and deliver the 2½ million feet of logs required by the contract was approximately $40 per thousand, there was also sufficient evidence to support a finding that this cost was $37.33 per thousand or a total of $93,325, as claimed by the plaintiff.  Adding to this total the amount of

$10,000 for the cost of establishing a camp and to make the initial roads necessary to produce the logs, as claimed by the plaintiff, the jury could find that plaintiff's cost to produce and deliver the 2½ million feet of logs required by the contract was $103,325. If this amount is subtracted from the contract selling price of $150,000 a profit of $46,675 would result, which is the amount of the verdict returned by the jury.

The Trial Court charged the jury that the measures of damages to be awarded was the amount of profits which would have been realized by the prevailing party if the contract had been fully performed. We are of the opinion that this was not the measure of damages under the facts of this case and that the charge as a whole did not state the proper rule of damages to be applied by the jury, as will appear hereinafter, and the verdict must be set aside for that reason. *West* v. *Railroad*, 81 N. H. 522, 531.

It is a well-established rule of law that in awarding compensatory damages for breach of contract, "the effort is made to put the injured party in as good a position as that in which he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with .harms that he had no sufficient reason to foresee when he made the contract." Restatement, Contracts, s. 329, *comment* a; *Hawkins* v. *McGee*, 84 N. H. 114, 117; *McLaughlin* v. *Union-Leader*, 99 N. H. 492, 497, 498; 5 Williston, Contracts (Rev. *ed.*) s. 1338.

"Where a buyer of goods under an executory agreement breaks his contract by refusing to accept the title to goods which are in existence . . . it is to be observed that if the buyer had . accepted and paid for the goods as he was bound to do by his contract, the seller· would have been obliged to surrender their ownership and to incur all the expenses of delivering them at the time and place agreed on, and he would, on the other hand, have received the price or become entitled to it. The buyer's wrong leaves him still owner of the goods and frees him from any expense of delivery of them, and on the other hand, deprives him of the price . . . The measure of damages is the difference between the contract price and the market price of the goods at the time. when and the place where the contract should have been performed." 5 Williston, Contracts (Rev. *ed.*) s. 1378; *Trask* v. *Hamburger*, 70 N. H. 453, 454; RSA 346:64.

This rule is based on the principle of avoidable consequences. 5 Corbin, Contracts, s. 1039. The defaulting buyer should be

credited with the price actually obtained or obtainable for these goods by a new sale. Restatement, Contracts, *s. 336, comment* c. The rule properly applies, however, only when a new sale can be made to a customer that the seller could not have supplied but for the buyer's repudiation. 5 Corbin, Contracts, *supra.*

A contract for the sale of logs to be severed and removed from the realty by the seller, as is the case here, is considered a contract for the sale of goods. *Kingsley* v. *Holbrook,* 45 N. H. 313, 322; *Peirce* v. *Finerty,* 76 N. H. 38, 42; see RSA 382-A:2-107 (1). These logs had a market price which according to the testimony of an agent of the defendant had been $60 per thousand with very small fluctuations, for five or six years. Other testimony placed their market value at or about the time and place of performance of this contract at a low of $45 and a high of $55 per thousand. There was evidence that in June, 1961, there was about two million feet of timber still standing on this lot. The plaintiff was given three years to remove this timber under his contract of purchase which period expires November 30, 1963.

There was evidence that this was virgin timber; "I didn't suppose there was any such good Spruce left standing." The subject matter of the contract between the plaintiff and the defendant was therefore specific goods and the market value obtainable on another sale is to be deducted from the contract price in awarding damages for a wrongful refusal by the buyer to accept them. *Trask* v. *Hamburger,* 70 N. H. 453, 454; *Milton* v. *H. C. Stone Lumber Co.,* 36 F. 2d 589 (7th Cir. 1930); *LaPorte Corp.* v. *Cement Corp.,* 164 Md. 642; *Reliance Cooperage Corp.* v. *Treat,* 195 F. 2d 977 (8th Cir. 1952).

Defendant requested the Court to instruct the jury that "In Breach of Contract cases, the party claiming to be damaged has the duty to mitigate damages" and excepted to the failure to give such an instruction. Although this request was inaccurate (Restatement, Contracts, *s. 336, comment* d) it was sufficient to call the attention of the Court to the rule of damages applicable to this case on which the defendant was entitled to instructions. *Peppin* v. *Railroad,* 86 N. H. 395, 401.

The jury should have been instructed, as it was substantially, that the plaintiff is to be awarded damages in an amount which will place it in as good a position as it would have been put by full performance of the contract, considering in arriving at this determination the amount of money which the plaintiff would have

received from the defendant less the cost to which the plaintiff would have been put to in performing his part of the contract. The jury should have been further instructed however, as it was not, that it should consider whether at the time the defendant refused to perform its part of the contract, the plaintiff might with reasonable effort and without undue risk have sold the logs which the defendant had contracted to buy to someone else at a price above plaintiff's cost of cutting and delivering them to such other purchaser or purchasers. If the jury should so find, and the burden on this issue is on the defendant (5 Corbin, Contracts, s. 1039, p. 212) plaintiff's damages would then be measured by the difference between the contract price to the defendant and the price the plaintiff could have reasonably obtained for the logs by a new sale or sales, that is their market value at the time and place for performance of the contract between the parties to this action. 5 Williston, Contracts (Rev. ed.) s. 1378, p. 3848; RSA 346:64.

The error in the charge did not affect the jury's finding that there should be a verdict for the plaintiff but merely its amount which is a separate matter. The retrial should therefore be limited to the issue of the measure and amount of damages to which the plaintiff is entitled. *Lampesis* v. *Comolli*, 102 N. H. 306, 308.

*New trial.*

All concurred.